The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Theresa B. Stephenson and the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission affirms the Deputy Commissioner's decision and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 13 November 1997, and following, and in a Pre-Trial Agreement admitted into evidence as Stipulated Exhibit #1, as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant-employer on 8 January 1997.
3. On 8 January 1997, Lumbermen's Mutual Insurance Company was the carrier on risk.
4. Plaintiff's average weekly wage is $606.00, yielding a compensation rate of $404.00 per week.
5. All parties have been properly designated and there is no question as to misjoinder or nonjoinder of parties.
6. The Industrial Commission Forms which are a part of the bound packet of stipulated documents are admitted into evidence as Stipulated Exhibit #2.
7. Plaintiff's 28 January 1997 recorded statement is admitted into evidence as Stipulated Exhibit #3.
8. Defendants Answers to Plaintiff's First and Second Sets of Interrogatories are admitted into evidence as Stipulated Exhibit #4.
9. Plaintiff's medical records regarding this claim are admitted into evidence as Stipulated Exhibit #5 and include the following providers:
1) Lenoir Memorial Hospital;
2) Kinston Orthopaedic Sports Medicine Center, P.A.;
3) Eastern Carolina Neurological Associates, Inc.;
4) Goldsboro Neurological Surgery, P.A.;
5) Wayne Memorial Hospital;
6) Southeastern Medical Oncology Center; and
7) Kinston Medical Specialists.
10. A handwritten statement by Chuck Bennett, dated 13 January 1997, is admitted into evidence as Stipulated Exhibit #7.
11. A handwritten statement by William R. Tyndall is admitted into evidence as Stipulated Exhibit #8.
12. The issues to be determined by this hearing are whether the plaintiff sustained a compensable injury on 8 January 1997; and, if so, what, if any, benefits is he entitled.
 *********** RULINGS ON EVIDENTIARY MATTERS
The objections contained within the depositions of Dr. Keith Tucci and Dr. Robert Lacin are ruled upon in accordance with the applicable law and the Opinion and Award in this case.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. On 8 January 1997, plaintiff was a 30-year old male employed by defendant-employer as a pipe welder at the DuPont plant in Kinston. Although plaintiff had only been continuously employed for approximately four (4) months prior to 8 January 1997 with defendant-employer, the plaintiff had worked periodically for defendant-employer for the past ten (10) years at different job sites on various short-term jobs and on an as-needed basis.
2. On 8 January 1997, plaintiff and several employees were requested to assist a demolition project of taking down pipes and valves at the plant. Approximately 3:00 p.m., plaintiff and his co-workers began disassembling a valve bolted about six (6) feet off the floor. The small room had a catwalk around it with waist high railings. While one employee unbolted the valve, the plaintiff and two or three other employees waited beneath in order to catch the valve as it came loose.
3. As the valve came down, the plaintiff received much of its 100 to 175 pounds weight. The valve was heavier than the plaintiff suspected and the plaintiff had to twist to prevent dropping the valve. Additionally, the handle of the valve caught on the catwalk. Plaintiff's co-workers helped place the valve on the catwalk.
4. At the time plaintiff felt the weight of the valve, he also felt a twitch in his lower back. Plaintiff informed his co-workers that he was going to take a break because the valve was too heavy. The plaintiff did not report his back pain to his supervisor on 8 January 1997 because he thought it was just a back strain and would go away. The evening of 8 January 1997, plaintiff took some over-the-counter pain reliever and his wife rubbed his lower back with a muscle relaxant.
5. Plaintiff returned to work for defendant-employer on 9 January 1997. On that date, plaintiff had a disagreement with defendant-employer concerning pay for a vacation day. Mike Rawls, the project manager at defendant-employer, informed plaintiff to go ahead home and he would receive that vacation day. Plaintiff was not scheduled to work on Friday, 10 January 1997.
6. On Saturday, 11 January 1997, plaintiff's lower back pain had increased and radiated into his right hand and right foot. The plaintiff sought treatment from the Lenoir Memorial Hospital emergency room. At that time, plaintiff reported his back pain began while lifting equipment at work on 8 January 1997.
7. The plaintiff again sought treatment from Lenoir Memorial Hospital emergency room on 12 January 1997 when his pain did not improve.
8. The plaintiff informed Lyn Chestnutt, the pipe supervisor, by phone on Sunday, 12 January 1997, that he thought he had hurt his back at work the previous week. Although Mr. Chestnutt remembered plaintiff saying he had hurt his back on Thursday, the day plaintiff did not work, Mr. Chestnutt informed the plaintiff he would turn it into the safety department the next morning. When plaintiff spoke to the safety director on Monday, the plaintiff indicated the incident with his back had occurred on Wednesday, 8 January 1997.
9. As a result of plaintiff's work-related incident, the plaintiff sought treatment from Dr. Claussen, an orthopaedist, in Kinston. Dr. Claussen first treated plaintiff conservatively with medication and later ordered an MRI. The radiology report from the 6 March 1997 MRI indicates no herniations, mild dehydration at L5-S1, but essentially normal.
10. Dr. Claussen referred plaintiff to Dr. Keith Tucci, a neurosurgeon, for evaluation. Dr. Tucci first treated plaintiff on 21 January 1997. When plaintiff's CT Scan and myelogram results were normal, Dr. Tucci referred plaintiff back to Dr. Claussen.
11. Plaintiff sought treatment from Dr. Robert Lacin upon referral from his attorney after Dr. Claussen's office refused to continue prescribing pain medication.
12. Dr. Lacin treated plaintiff on 18 March 1997. Dr. Lacin diagnosed a subligamentous disc herniation at L5-S1 after viewing the actual previous MRI films from earlier in March. Dr. Lacin also diagnosed a neural stretch injury. Plaintiff underwent steroid injections, but these did not improve his back pain.
13. As a result of the work-related incident to his back on 8 January 1997, plaintiff underwent a hemilanectomy and decompression of the L5-S1 nerve root on 6 August 1997. The surgery relieved plaintiff's back pain, but he still had pain in his right leg. Dr. Lacin recommended treatment in pain management at the Duke University Multi-Discipline Pain Clinic. Plaintiff has not yet been able to attend.
14. Dr. Lacin last treated plaintiff on 26 August 1997. At that time, Dr. Lacin rated plaintiff with a fifteen percent (15%) permanent partial impairment. Plaintiff had reached maximum medical improvement on that date, although there is some chance plaintiff's nerve injury may improve in the future.
15. As a result of plaintiff's work-related injury on 8 January 1997, plaintiff has been unable to work or earn wages due to his pain from 11 January 1997 and continuing. During fall 1997, plaintiff tried to work for a week at M M Manufacturing, but was unable to continue, due to pain. Plaintiff earned $400.00 for this work.
16. Plaintiff has sought work since fall of 1997, but at the time of hearing had been unable to find any work within his restrictions of no lifting over twenty (20) pounds.
17. Prior to January 1997, plaintiff had not sustained any back injury and had been treated for back problems.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 8 January 1997, plaintiff suffered a compensable injury to his back arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. As a result of his continuing back problems and pain from his 8 January 1997 compensable injury, plaintiff has been unable to work or earn wages from 11 January 1997 and continuing, except for a week he earned $400.00 in the fall of 1997. Plaintiff is entitled to temporary total disability at his compensation rate of $404.00 per week from 11 January 1997 and continuing until further Order of the Commission. Defendants are entitled to a credit in the amount of $400.00 for wages plaintiff earned in fall 1997. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to have defendants provide all medical treatment arising from his 8 January 1997 injury by accident to the extent it tends to effect a cure, give relief or lessen plaintiff's disability.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation at rate of $404.00 per week, from 11 January 1997 and continuing until further Order of the Commission, subject to an attorney fee herein approved. Those amounts which have accrued shall be payable in a lump sum and subject to a $400.00 credit for the defendants.
2. An attorney's fee of twenty-five percent (25%) of the compensation due plaintiff under Paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid as follows: Twenty-five percent (25%) of the lump sums due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be sent directly to plaintiff's counsel. Consideration and designation of this attorney fee contemplates that counsel for the plaintiff shall continue and is ORDERED to monitor the submission of medical expenses to defendants.
3. Defendants shall pay all medical expenses incurred by plaintiff as a result of his 8 January 1997 compensable injury for so long as such examinations, evaluations and treatments may be reasonably necessary to effect a cure, give relief or tend to lessen plaintiff's period of disability, when bills for the same shall have been submitted in accordance with North Carolina Industrial Commission procedure.
4. Defendants shall pay the costs.
 S/ _____________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ _____________ THOMAS J. BOLCH COMMISSIONER
S/ _____________ BERNADINE S. BALLANCE COMMISSIONER